UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

DEBBIE BENNETT,
PHILLIP BENNETT,
Individually and on behalf other similarly situated
    Plaintiffs,

 -vs-                                           Case No.
                                                 Hon.

ASSET ACCEPTANCE LLC.,
CONVERGENT OUTSOURCING, INC.
    Defendants.

## **COMPLAINT & JURY DEMAND**

*Debbie Bennett and Phillip Bennett state the following claims for relief:*

### **Jurisdiction**

1.     This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d), the TCPA, 47 U.S.C. § 227 *et seq.,*  and 28 U.S.C. §§1331,1337.

### **Parties**

2.     Plaintiff Debbie Bennett is a natural person and a resident of Oakland County, Michigan, the spouse of Phillip Bennett, and meets the definition of a "consumer" under 15 U.S.C. § 1692a(3).

3.     Plaintiff Phillip Bennett is a natural person and a resident of Oakland County, Michigan, the spouse of Debbie Bennett, and meets the definition of a "consumer" under 15 U.S.C. § 1692a(3).

4.     Defendant Asset Acceptance, LLC. ("Asset Acceptance"), is a debt collection company located in Michigan which regularly collects debts owed to another and therefore meets the

definition of a "debt collector" under the FDCPA 15 U.S.C. § 1692a(6).

5. Defendant Convergent Outsourcing, Inc. ("Convergent") provides automated telephone dialing services to companies such as Asset Acceptance.

6. Convergent regularly collects debts owed to another and therefore meets the definition of a "debt collector" under the FDCPA 15 U.S.C. § 1692a(6).

7. Convergent acts as an agent for Asset Acceptance, providing autodialing services and collecting on delinquent and defaulted accounts for Asset Acceptance.

## Venue

8. The transactions and occurrences which give rise to this action occurred in Oakland County.

9. Venue is proper in the Eastern District of Michigan.

## General Allegations

10. Debbie and Phillip Bennett each maintain a cellular telephone through a single carrier, each having a separate line on a "Shared Usage" plan.

11. The service for their cellular phones is via a "cellular telephone service" as described in 47 U.S.C. § 227(b)(1)(A)(iii).

12. The Bennett's maintain their cell phones to maintain personal contacts with family and friends and for emergency contact.

13. Debbie Bennett does not have an "established business relationship" with Asset Acceptance or Convergent as that term is defined in 47 U.S.C. § 227(a)(2).

14. Phillip Bennett does not have an "established business relationship" with Asset Acceptance or Convergent as that term is defined in 47 U.S.C. § 227(a)(2).

15. Asset Acceptance used Convergent to telephone and collect from Debbie and Phillip Bennett

at times relevant to this complaint.

16. In the early part of 2012, Asset Acceptance, in its own capacity, and/or through Convergent, launched a collection campaign against Phillip Bennett calling him on his cell phone to collect on a Citibank account.

17. Over the next months, Defendants called Phillip Bennett in some periods on a daily basis and on many days, multiple times in a day.

18. Phillip Bennett did not owe the account and never had a Citibank account.

19. Rather, Asset Acceptance wrongly attributed the account of a different Phillip Bennett to Plaintiff Bennett.

20. The delinquent balance on the account constituted a "debt" for purposes of 15 U.S.C. § 1692a(5).

21. Debbie Bennett answered some of the phone calls and advised Asset and/or Convergent that her husband did not have a Citibank account and they were calling the wrong person.

22. Further, when Debbie Bennett disclosed her husband's social security number to Asset Acceptance, it acknowledge that the number was different from that of the account holder.

23. Nonetheless, Defendants continued to call Mr. Bennett repeatedly and continuously with the intent of harassing him into paying the account, 15 U.S.C. § 1692d(5).

24. Phillip Bennett asked Defendants to stop calling but they ignored his multiple requests.

25. Defendants began calling Debbie Bennett on her cell phone to collect on the account.

26. Debbie Bennett asked Defendants to stop calling but they ignored her multiple requests.

27. Phillip Bennett never gave his consent to Defendants to call his cell phone.

28. Debbie Bennett never gave her consent to Defendants to call her cell phone.

29. The Bennetts do not know how the Citibank account came to be associated with their cellular phones.

30. Even though the Bennetts have no established business relationship with either Asset Acceptance or Convergent, the Bennetts have received at least a hundred of calls from Defendants to their cellular phones seeking payment on the account.

31. Each of calls at issue in this Complaint occurred within the preceding four years.

32. In each of these calls, Asset Acceptance and/or Convergent used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) to initiate the calls to Debbie Bennett on her cellular telephone.

33. In each of these calls, Asset Acceptance and/or Convergent used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) to initiate the calls to Phillip Bennett on his cellular telephone.

34. In the calls, Asset Acceptance and/or Convergent used a "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with Debbie Bennett on her cellular telephone.

35. In the calls, Asset Acceptance and/or Convergent used a "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A) to communicate with Phillip Bennett on his cellular telephone.

36. Even though Asset Acceptance knew it was collecting from the wrong Phillip Bennett, in May, 2012, it filed a bogus lawsuit against him.

37. Asset Acceptance received Mr. Bennett's answer to the complaint in which he again stated that he was not the debtor and noted that his social security number differed from that of the

debtor.

38. Nonetheless, Asset Acceptance continued its lawsuit against Mr. Bennett and it proceeded to mediation on September 14, 2012.

39. At the mediation, Mr. Bennett stated that in addition to relief from the wrongful lawsuit, he needed the calls to his cell phone to stop.

40. Upon learning that Asset Acceptance sued the wrong Philip Bennett, the case was referred out of mediation to presiding Judge Richards who dismissed the case *with prejudice*.

41. Even though the case was over, Defendants continued to place collection calls to the Bennetts, calling at least 36 times in the period following the dismissal, and on some days calling multiple times.

42. The calls from Defendants have caused numerous interruptions and disruptions of the Bennett's work, social engagements, and recreation.

43. As a result of Defendant's wrongful conduct, Debbie and Phillip Bennett have suffered damages.

## Common Allegations

44. Asset Acceptance, falls within the definition of a "person", as defined by 47 U.S.C. § 153(39).

45. Convergent falls within the definition of a "person", as defined by 47 U.S.C. § 153(39).

46. Defendants use an autodialer system and prerecorded messages to contact large numbers of persons to collect debts.

47. Defendants failed to vet or verify that the persons it was calling with its automated dialer and prerecorded messages are in fact the person who have expressly consented to being

contacted via these means.

48. Defendants' systematic efforts resulted in a sufficient number of improperly placed calls that Defendants' needed to change its systems to allow these persons the ability to stop the calls.

49. Asset Acceptance has been the target of numerous complaints concerning its automated dialing and prerecorded messages by persons who have not consented to be contacted via these means.

50. Defendants did not use its automated dialer or prerecorded voice calls for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(I).

## Class Definition and Class Issues

51. Debbie and Phillip Bennett bring this action on behalf of himself and a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

52. The Bennetts propose to represent the following classes:

   a. All persons within the State of Michigan, who on or after December 22, 2008, received a non-emergency telephone call from Asset Acceptance to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls.

   b. All persons within the State of Michigan, who on or after December 22, 2008, received a non-emergency telephone call from Convergent to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls.

   c. All persons within the State of Michigan, on or after December 22, 2011, who have received a telephone call from Asset Acceptance, in which Asset Acceptance sought

       to collect a debt from the intended recipient of the call, and where the actual recipient of the call was not then intended recipient of the call.

53. A search of internet complaints reveals dozens of persons who have complained of similar conduct by Asset Acceptance.

54. The FTC filed its nine count complaint against Asset Acceptance, which included a count for repeatedly calling third parties who do not owe the debt; specifically, the complaint alleged in that "in *numerous instances* Asset collectors telephone individuals who are not the consumers who allegedly owe the debts that Asset is attempting to collect. Asset identifies these wrong parties' phone numbers either because the original account data Asset purchased is outdated and inaccurate, or because the skip-tracing databases it uses to update consumer information are inaccurate." *United States of America v. Asset Acceptance*, LLC, No. 8:12–cv–182–T–27EAJ (M.D.Fla.2012) ¶ 25.

55. The case was resolved by consent decree when Asset Acceptance agreed to pay $2.5 million in civil penalties for violations of the FDCPA and FCRA.

56. Based upon these complaints, it appears that there are several hundred class members.

57. The class is so numerous as to make it impracticable to join all the disparate members of the class.

58. This complaint seeks monetary damages under Fed.R.Civ.P. 23(b)(3).

59. The class claims in this case present common questions of law and fact including whether:

    a. Defendants use an autodialer to collect its debts;

    b. Defendants use prerecorded voice messages to collect its debts;

    c. Defendants made nonemergency calls to the Bennetts and the class members'

        cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

    d.     Defendants had the prior express consent to make calls to the Bennetts and the class members' cellular phones using an automated dialer or prerecorded voice;

    e.     Defendants' conduct was knowing and/or willful;

60. These common questions predominate over any question affecting only individual class members.

61. The Bennetts's claims are typical of the claims of the class members.

62. The Bennetts base their claims and those on behalf of the class upon the same legal and remedial theories.

63. The Bennetts will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims in this case.

64. The Bennetts have suffered similar injuries as the members of the classes that they seek to represent.

65. The Bennetts have retained counsel experienced in handling class action suits involving unfair business practices and consumer law.

66. Neither the Bennetts nor their counsel have any interest which might cause them not to vigorously pursue this action.

67. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68. No individual class member could be expected to hold a strong interest in individually

controlling the prosecution of separate claims against Defendants, because the claim amounts are likely small and involve statutory damages under the TCPA.

69. Management of these claims will likely present few difficulties because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

## **COUNT I – Class Claim under the Fair Debt Collection Practices Act**

70. Debbie and Phillip Bennett incorporate the preceding allegations by reference.

71. At all relevant times Defendants – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

72. Asset Acceptance is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

73. Convergent is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

74. At all times relevant to this complaint, Defendants sought to collect a "consumer" debt from Debbie and Phillip Bennett and the class members who did not owe the debt.

75. In seeking to collect against Debbie and Phillip Bennett and the class members, Defendants falsely represented the character, amount, or legal status of the debt and collected or attempted to collect amounts that were not expressly authorized by agreement or permitted by law, in violation of the provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, e(2), e(10), 1692f and f(1).

76. Defendants' use of automatic telephone dialing systems and artificial voice technology to place unconsented calls to Debbie and Philip Bennett and the class members' cell phones in

violation of the TCPA 47 U.S.C. § 227 *et seq*., is in violation of the FDCPA, including but not limited to a harassing oppressing and abusive method of collection a debt in violation 15 U.S.C. § 1692d and an unfair and unconscionable means to collect or attempt to collect a debt in violation 15 U.S.C. § 1692g.

77. The Plaintiffs have suffered damages as a result of these violations of the FDCPA.

## **COUNT II – Individual Claims under the Fair Debt Collection Practices Act**

78. Debbie and Phillip Bennett incorporate the preceding allegations by reference.

79. At all relevant times Defendants – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

80. Asset Acceptance is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

81. Convergent is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

82. At all times relevant to this complaint, Defendants sought to collect a "consumer" debt from Debbie and Phillip Bennett and the class members.

83. The violations of the Defendants in collecting from the Bennetts, include, but are not limited to 15 U.S.C. §1692d(5).

84. The Plaintiffs have has suffered damages as a result of these violations of the FDCPA.

## **COUNT II – Class Claim under the Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200** *et seq.*

85. Debbie and Phillip Bennett incorporate the preceding allegations by reference.

86. Defendants have negligently violated the TCPA, 47 U.S.C. § 227 *et seq*., in relation to the Bennetts and the class members.

87. As a result of Defendant's negligent violations of the TCPA, the Bennetts and class members may recover statutory damages of $500.00 for each and every call in violation of the statute.

88. Alternatively, Defendants have knowingly or wilfully violated the TCPA in relation to Debbie and Phillip Bennett and the class members.

89. As a result of Defendants willful violations of the TCPA, Debbie and Phillip and class members may recover statutory damages of up to $1,500.00 per call in violation of the statute.

## Demand for Jury Trial

90. Debbie and Phillip Bennett demand trial by jury in this action.

## Demand For Judgment for Relief

91. *Accordingly, Debbie and Phillip Bennett request that the Court:*

   a. *Certify this matter as a class action.*

   b. *Grant statutory damages.*

   c. *Award costs and attorney fees.*

Respectfully Submitted,

By: s/ Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Debbie and Phillip Bennett
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Julie@MichiganConsumerLaw.com

Dated: December 22, 2012